**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


YOLANDA BELL,                 :
                                    :

          Plaintiff,           :

v.                              :        Civil Action No. 16-0959 (RC)
                                      :

DEPARTMENT OF DEFENSE,    :
                                      :

          Defendant.        :


## <u>MEMORANDUM OPINION</u>

## I.  INTRODUCTION

Plaintiff, Yolanda Bell ("Plaintiff"), proceeding *pro se*, has filed suit against the Department of Defense ("Defendant," "DOD," and "DLA").  *See* Petition[1] ("Compl.") [ECF No. 6].  Plaintiff alleges violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("Privacy Act" & "PA"), 5 U.S.C. § 552a.

Currently before the Court is Defendant's Motion Summary Judgment ("Def.'s Mot."), Memorandum ("Def.'s Mem."), and Exhibits ("Def's Exs.") in support [collectively, ECF No. 16].  Defendant argues that it conducted an adequate search for responsive documents, properly withheld responsive information under applicable exemptions, and satisfied its segregation obligations under FOIA.  Def.'s Mem. at 20–33.  Plaintiff opposes Defendant's Motion for Summary Judgment.  *See* Plaintiff's Memorandum in Opposition ("Pl.'s Opp.") [ECF No. 23]; *see*

---

[1]  Plaintiff mistakenly filed her initial pleadings in the U.S. Court of Appeals for the District of Columbia Circuit on October 29, 2015, however, the case and operative pleadings were transferred to the jurisdiction of this Court on September 1, 2016.  *See* Minute Order, *Bell v. Dep't of Defense*, No. 16-0959 (D.D.C. Sept. 9, 2016).

*also* Plaintiff's Exhibits in Opposition ("Pl.'s Exs.") [ECF No. 25]. In response, Defendant filed a Reply to Plaintiff's Memorandum in Opposition ("Def.'s Reply") [ECF No. 32].

Plaintiff has also filed a self-described "*Ex Parte*" Letter ("Ex P. Let.") [ECF No. 28] requesting certain accommodations. Lastly, Plaintiff has filed a Motion for Leave to Amend the Complaint and supporting Exhibits ("Mot. to Amend" & "Pl.'s MTA Exs.") [collectively, ECF No. 30], which Defendant has opposed, *see* Defendant's Opposition to Motion for Leave to Amend ("Def.'s Opp. to MTA") [ECF No. 34]. For the reasons stated herein, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion and Letter, and requests for relief therein, are denied.

## II. FACTUAL BACKGROUND

Plaintiff was employed with the DOD's Defense Logistics Agency ("DLA") as a program analyst from July 2011 through her termination on February 6, 2015. Compl. at 2 ¶ 1. Plaintiff has filed various complaints before the Equal Employment Opportunity Commission ("EEOC"), United States Merit Systems Protection Board ("MSPB"), and in various federal district courts. *Id.*; Pl.'s Opp. at 3. Among that litigation, Plaintiff filed *Bell v. Dept. of Defense*, Case No. 14-cv-470 (TSE) (IDD), [ECF No. 1], in the Eastern District of Virginia, on April 29, 2014, which is relevant to the facts herein. In the past five years Plaintiff has filed eleven cases in this Court.[2] Four of those matters are currently active. *See* n.1. From August 2014 through March 2015, Plaintiff submitted approximately nine FOIA/PA requests to Defendant, as explained in further detail below.

---

[2] Other than this case, Plaintiff has filed: *Bell v. U.S.*, No. 1:18-cv-00738-RC (D.D.C. 2018) (currently active); *Bell v. Dep't of Defense*, No. 1:18-cv-01498-RC (D.D.C. 2018) (currently active); *Bell v. U.S.*, No. 1:16-cv-02083-RC (D.D.C. 2018) (closed); *Bell v. Dep't of the Interior*, No. 1:16-cv-02407-RC (D.D.C. 2017) (closed); *Bell v. Dep't of Defense*, No. 1:16-cv-02403-RC (D.D.C. 2016) (currently active); *Bell v. Dep't of Defense*, No. 1:16-mc-01020-RC (D.D.C. 2016) (closed); *Bell v. Dep't of the Interior*, No. 1:16-mc-02434-RC (D.D.C. 2016) (closed); *Bell v. Dep't of Defense*, No. 1:15-cv-01813-RBW (D.D.C. 2015) (closed); *Bell v. Dep't of the Interior*, No. 1:15-cv-01812-RBW (D.D.C. 2015) (closed); *Bell v. Jewell*, No. 1:13-mc-00747-ABJ (D.D.C. 2013).

FOIA/Privacy Act Request No. 14–HFP–00021

On August 1, 2014, Plaintiff submitted FOIA/PA Request ("Request No. 14–HFP–00021") to DLA seeking any and all documentation containing her name. Pl.'s Compl. Ex. 1b; Declaration of Lewis Oleinick,[3] attached as Defendant's Mem. Exhibit A ("Oleinick Decl.") at 2 ¶ I 1; Oleinick Declaration Attachment ("Oleinick Ex.") 1. Defendant then corresponded with Plaintiff, requesting that she narrow the scope of her request. Compl. at 2–3; Pl.'s Compl. Exs. 2–5; Oleinick Decl. at 3 ¶ I 1–2(d); Oleinick Exs. 2–6. On August 18, 2014, Plaintiff replied and narrowed her chosen search location(s) to twelve systems of records and provided additional required documentation. *Id.* Thereafter, DOD subject matter experts conducted electronic searches using Plaintiff's name, log-in identification, and specific search terms. Oleinick Decl. at 4 ¶¶ I 5(e)–2(f); Oleinick Ex. 6(b). Defendant also conducted physical file searches. *Id.*

On September 15, 2014, Defendant released four compact-discs, containing 416 pages of records, located from eight of twelve designated systems of records. These documents were dated between August 2013 and August 2014, consisting mostly of Plaintiff's personnel records. Compl. at 3 ¶ 7; Oleinick Decl. at 4 ¶ I 2(g); Oleinick Exs. 7–9. Plaintiff was also advised of her appeal rights. Oleinick Decl. at 4; Oleinick Ex. 7. Defendant indicates that Plaintiff did not pursue an appeal and Plaintiff states that she did, in fact, pursue an appeal. *Id.*; Pl.'s Opp. at 5. Plaintiff also indicates that she waged a complaint regarding the released date-range; Plaintiff states that she wanted documents from her entire time period of employment, rather than the select years provided. Pl.'s Opp. at 5.

---

[3] Mr. Oleinick's original Declaration, submitted with the Motion for Summary Judgment, was inadvertently unexecuted. After receiving notice from the Court, *see* Minute Order, *Bell v. Dep't of Defense*, No. 16-0959 (D.D.C. Aug. 29, 2018), Defendant submitted an identical executed version of the same declaration. *See id.*, at ECF No. 36.

<u>FOIA/Privacy Act Request Nos. 15–HFP–00001 & 00006 and Appeal Nos. 15–APP–00008 & 00014</u>

On September 23, 2014, Plaintiff submitted another FOIA/PA Request ("Request No. 15–HFP–00001") from the same twelve systems of records, seeking "any and all documentation that contains [her] name…all emails that contain [her] name…[and] [her] supervisors in [her] supervisory chain." Compl. at 4 ¶ 8; Oleinick Decl. at 5 ¶ II 1; Oleinick Ex. 10. Plaintiff requested documents originating between July 2011 and the date of the request. *Id.* Defendant searched its systems of records using variations of Plaintiff's name, appraisals, performance, timesheets, evaluations, etc., to search for hardcopies and through electronic databases. Oleinick Decl. at 6 ¶¶ II 2(b), 2(c); Oleinick Exs. 11(a), 11(b). The search rendered more than 3,500 records. Oleinick Decl. at 7–8 ¶ II 2(c)–(g). Therefore, the parties agreed to interim disclosure. *Id.* Defendant issued an interim disclosure on or about December 4, 2014. Oleinick Decl. at 7–8 ¶ II 2(c)–(g); Oleinick Exs. 16, 17. Additionally, 46 pages of documents were released in full and 86 pages of emails were disclosed with redactions. *Id.* Information was withheld pursuant to Exemption 5 of FOIA, pursuant to the deliberative process and attorney-client privilege. *Id.*

Plaintiff withdrew her acceptance of interim productions on December 10, 2014. Compl. at 6 ¶ 16. Shortly thereafter, for administrative convenience, Request No. 15–HFP–00001 was reassigned Request No. 15–HFP–00006 ("Request No. 15–HFP–00006"). Oleinick Decl. at 8 ¶ 2 (h). Defendant then indicated that it would provide its full production by April 17, 2015. Oleinick Decl. at 9 ¶ II 2 (m). On April 20, 2015, Defendant released compact-discs containing 7,006 pages of records in full or in part. Oleinick Decl. at 11 ¶¶ II 2 (y)–2 (z); Oleinick Ex. 32. Plaintiff indicates that 5,762 pages were withheld, 3,591 were partially redacted, and 3,559 were released in full. Compl. at 12 ¶ 34. Defendant withheld and redacted records under Exemption 5 of FOIA,

pursuant to the deliberative process and attorney-client privilege, and personal privacy Exemption, (b)(6). Oleinick Decl. at 11 ¶¶ II 2(y)–2(z); Oleinick Ex. 32.

In total, Defendant reports that it reviewed over 12,000 pages of records as a result of this Request alone. Defendant's Statement of Material Fact ("Def.'s Stmt.") at 4 ¶ 14; Oleinick Ex. 32 at 4. Defendant informed Plaintiff that she would receive 2.5 hours of search time, and the first 100 pages, free of charge. *Id.* Defendant further states that the "search was under 2 hours [and] the documents had been gathered in anticipation of litigation prior to her request." *Id.*

According to Defendant, Plaintiff filed an untimely appeal of Request No. 14–HFP–00021 (her first request) however, it was instead construed as an appeal ("Appeal Nos. 15–APP–00008 & 00014") of the April 20, 2014 production letter pertaining to Request Nos. 15–HFP–00001 and 00006. Oleinick Decl. at 11 ¶ II 2 (dd); Oleinick Ex. 33 at 14–15 ¶¶ II 2 (ff)-2 (gg); Compl. at 141–42; Pl.'s Exhibit 40. Plaintiff disagrees that the appeal was untimely.[4] Pl.'s Opp. at 6. DLA's administrative appellate body affirmed the withholdings. Oleinick Decl. at 11 ¶ II 2 (dd), (ff)–(gg); Oleinick Ex. 33 at 14–15; Compl. at 141–42; Pl.'s Exhibit 40. However, Defendant made a subsequent release of an additional 996 pages of records. Oleinick Decl. at 11 ¶ II 2 (dd), (ff)–(gg); Oleinick Exs. at 36–7. These records consisted of: Plaintiff's emails with supervisors, supervisors' EEO declarations, and leave and reasonable accommodation records. *Id.* This supplemental disclosure then narrowed the withheld records to 4,203 in full. Def.'s Mem. at 5 ¶ 2.

<u>FOIA/Privacy Act Request No. 15–HFP–00005 & Appeal No. 15–APP–00007</u>

On November 28, 2014, Plaintiff submitted a letter to DLA Human Resources ("HR") in response to receiving correspondence from defendant regarding her proposed removal from

---

[4]  Regardless of this dispute about the appeal's timeliness, Defendant does not now argue that such alleged untimeliness results in a failure to exhaust administrative remedies.

service with DLA due to her "AWOL" status. Compl. at 4 ¶ 13. In her letter, Plaintiff requested records relating to 13 subject areas, with some overlap from her prior requests. *Id.* at 52–56; Pl.'s Compl. Ex. 12; Oleinick Decl. at 15–16 ¶ III 1; Oleinick Ex. 38. Plaintiff's letter indicated that the requests should be considered under PA/FOIA "only upon [the] refusal" of DLA HR to provide her with the requested records. *Id.* On December 1, 2014, DLA HR responded and provided Plaintiff with records from four of the 13 requested subject areas (4, 5, 9, and 10). Oleinick Decl. at 16 ¶¶ 3–4; Oleinick Ex. 39. Defendant also informed Plaintiff that she may be able to retrieve some of the remaining documents from her own electronic personnel file and indicated that some of them had already been sent to her. *Id.*

On December 4, 2014, DLA acknowledged the outstanding requested subject areas (1, 2, 3, and 7), and assigned "Request No. 15-HFP-00005." Oleinick Decl. at 16 ¶¶ 5(a), 5(b); Oleinick Ex. 40. Plaintiff appeared to be requesting information on other employee disciplinary actions based on AWOL status. Oleinick Decl. at 17 ¶ III 5(d); Oleinick Ex. 41(b). Thus, DLA searched its Labor Management Employee Relations and Case Management Tracking databases using the key term "AWOL," and further narrowing the search to instances where Plaintiff's enumerated custodians were the deciding officials for the disciplinary action. *Id.*

By letter dated December 30, 2014, DLA responded again. Oleinick Decl. at 21 ¶ III 7(e); Compl. at 70. Plaintiff was provided with "a copy of the anonymized records [spreadsheets] responsive to her request . . . showing proposed disciplinary and adverse actions issued to agency employees for the offense of [AWOL] and/or like offenses/charges." Oleinick Decl. at 21–2 ¶ III 7(e)(i). These spreadsheets were released in full, excepting the redactions of third-party personal identifiers. *Id.*

Nonetheless, on January 13, 2015, Plaintiff appealed Defendant's response. Oleinick Decl. at 21 ¶ III 8(a)–(b). Plaintiff challenged responses to her Requests relating to subject areas 5 and 12. Compl. at 75–6. On appeal, DLA determined that those particular subject areas had not been processed under FOIA/PA, pursuant to Plaintiff's own initial instructions that any documents released pursuant to her initial letter not be considered under FOIA/PA. Pl.'s Compl. Ex. 12; Oleinick Decl. at 15–16 ¶ III 1; Oleinick Ex. 38; Def.'s Stmt. at 6–7. DLA's appellate body also notified Plaintiff that the Privacy Act prevented DLA from releasing records related to other employees' disciplinary actions without their consent. Def.'s Stmt. at 22 ¶ 8 (b).

FOIA/Privacy Act Request No. 15–HFP–00011

On January 13, 2015, Plaintiff submitted another FOIA/PA request ("Request No. 15–HFP–00011") for records of proposed terminations for employees determined to be AWOL, and further seeking the race, sex, age, disability, and other demographic information, of certain supervisors. Compl. at 74; Oleinick Decl. at 23 ¶ IV 1. A search was conducted which resulted in a large amount of records, resulting in a fee request of $4,312.00. Oleinick Decl. at 24 ¶ IV 2(b); Oleinick Ex. 47(b). Plaintiff was notified by letter that DLA would require half of the amount to begin the full process. Compl. at 88; Oleinick Decl. at 24–25 ¶ IV 2 (c). Despite these inquiries, Plaintiff did not respond with the required payment, and DLA administratively closed the request. Oleinick Decl. at 24–5 ¶ IV 2(f); Oleinick Ex. 50.

FOIA/Privacy Act Request Nos. 15–HFP–00028, 15–HFP–00029, 15–HFP–00030

On March 10, 2015, Plaintiff submitted three additional contemporaneous FOIA/PA Requests ("Request Nos. 15–HFP–00028, 15–HFP–00029, 15–HFP–00030"). Oleinick Decl. at 24–25 ¶ V 2. Defendant acknowledged the Requests on March 30, 2015. *Id.* at 26 ¶ V 3. Request No. 15–HFP–00028 sought DLA's "official case file relating to [Plaintiff's] removal from federal

service." *Id.* By letter to Plaintiff, dated May 6, 2015, Defendant indicated that records responsive to Request No. 15–HFP–00028, had already been provided to her in response to Request No. 15–HFP–00006. *Id.* at 27 ¶ V 5(c)–(d).

Plaintiff's Request No. 15–HFP–00029, specifically sought, "all documentation that contains my name including but not limited to my full EOPF." Oleinick Decl. at 28 ¶ V 6. Defendant conducted a search, and "provided [Plaintiff] with a CD of her full OPF and full release records from 4 of 9 of the requested systems of record . . . [r]ecords were not found in 5 of the 9 requested systems of records." *Id.* at 28–9 ¶ 7(b), 7(d); Oleinick Ex. 57(a).

Finally, Plaintiff's Request No. 15–HFP–00030 requested all AWOL adverse action records with an expanded date scope. *Id.* at 29 ¶ 8. Defendant again found that this Request was *partially* duplicative of a prior request, namely, Request No. 15–HFP–00011. Oleinick Decl. at 29–30 ¶ 9 (a)–(d). Of course, Plaintiff had not paid for the records compiled pursuant to Request No. 15–HFP–00011. Oleinick Decl. at 24–5 ¶ IV 2(f); Oleinick Ex. 50.

On April 20, 2015, Defendant provided a fee estimate letter for search and review of all records potentially responsive to Request No. 15–HFP–00030. *Id.* at 29 ¶ 9 (b); Oleinick Exs. 59 (a)–(b). In the same correspondence, Defendant requested the amount of $2,156 by May 21, 2015 in order to avoid administrative closure of the request. *Id.*

On April 21, Plaintiff requested a fee waiver, stating that the information she was seeking had "already been compiled" and should take "a marginal amount of additional search time." Oleinick Decl. at 29 ¶ 9 (c); Oleinick Ex. 60. Ms. Bell also stated that her request "only included those [AWOL disciplinary actions] from DLA Headquarters," and that the information would contribute significantly to public understanding of government operations and activities, and finally, that she was indigent. *Id.* On April 24, 2015, DGA informed Plaintiff that her fee waiver

request did not meet the criteria established by 32 CFR § 286.28, and the fee waiver was summarily denied. Oleinick Decl. at 29 ¶ 9 (c); Oleinick Ex. 61. On May 26, 2015, as no payment had been received, Request No. 15–HFP–00030 was administratively closed. Oleinick Decl. at 30 ¶ 9 (d)–(e); Oleinick Ex. 62.[5]

Additional Disclosures

Defendant states that, in preparing to litigate this action, it reviewed and/or re-reviewed the majority of records relevant to Request Nos. 15–HFP–00001, 15–HFP–00006, and 15–APP–00014. Oleinick Decl. at 30-31 ¶¶ VI 1–4. Defendant reviewed 5,199 pages of e-mail records previously withheld in full and 1,693 pages of records previously withheld in part. *Id.* After this supplemental review, an additional 4,054 pages were released in full on or about January 9, and February 6, 2017. *Id.* Defendants state that the disputed withheld documents have now been narrowed to 1,145 records withheld in full, and 350 records withheld in part. Def.'s Reply at 1–2.

Additionally, as part of Defendant's Reply to Plaintiff's Opposition, it indicates that its original *Vaughn* Indices, and documents in support, inadvertently failed to reflect communications by Michael Simon, one of Plaintiff's former supervisors. Def.'s Reply at 6 ¶ 1. DLA "reviewed the attachments to [its] [initial] declaration dated February 8, 2017 . . . and realized it has not attached the *Vaughn* index it has created for records from Mr. Michael Simon." *See* Exhibit A to Def.'s Reply, Second Declaration of Lewis Oleinick ("Supp. Oleinick Decl.") at 3 ¶ 14; Supplemental *Vaughn* Index ("Supp. *Vaughn* Index") (attached to Supp. Oleinick Decl.). Mr. Oleinick indicates that, in creating the supplemental *Vaughn* index, he found that Plaintiff previously received all reasonably segregable portions of records relating to Mr. Simon, with the exception of two pages. Supp. Oleinick Decl. at 4 ¶ 15. Therefore, two additional attached pages

---

[5] Plaintiff does not appear to challenge the denial of the fee waiver in this case.

that had been marked as releasable in the *Vaughn* Indices, but had mistakenly been withheld from Plaintiff, were identified and released. *Id.*

## III. STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F. 3d 521, 527 (D.C. Cir. 2011); *Defenders of Wildlife v. 77 U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it can affect the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F. 2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v.*

*DOJ*, 627 F. 2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted).  In assessing a defendant's motion, a court must "view the facts and draw reasonable inferences in the light most favorable to a plaintiff.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, "[s]ummary judgment may be granted on the basis of agency affidavit [,]" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch v. U.S. Secret Serv.*, 726 F. 3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F. 3d 283, 287 (D.C. Cir. 2006)); *see also Peavey v. Holder*, 657 F. Supp. 2d 180, 188 (D.D.C. 2009) (quoting *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002)).  Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in good faith.  *Defenders of Wildlife*, 314 F. Supp. 2d at 8.  However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims . . . ." *SafeCard Servs. v. SEC*, 926 F. 2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F. 2d 770, 771 (D.C. Cir. 1981)).

In a Privacy Act access case, a court may similarly rely on agency affidavits or declarations to enter summary judgment.  *See Chambers v. U.S. Dep't of the Interior*, 568 F. 3d 998, 1003 (D.C. Cir. 2009).  At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, a court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.  *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 179–80 (D.D.C. 2001) (citing *Chambers,* 568 F. 3d at 1003).  Even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof,

a court cannot grant the motion for the reason that it was conceded. *Winston & Strawn v. McLean*, 843 F. 3d 503, 505 (D.C. Cir. 2016). The burden is always on the movant to demonstrate why summary judgment is warranted. *Id.* A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.' " *Id.* at 508–9 (quoting Fed. R. Civ. P. 56(a)).

## IV. ANALYSIS

### i. Adequacy of the Searches

Government agencies must demonstrate that they conducted searches reasonably calculated to uncover all relevant documents. *Peavey v. Holder*, 657 F. Supp. 2d 180, 187 (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485. "[A]n agency could demonstrate appropriate, reasonable search methods by demonstrating a 'systematic approach to document location.' " *Nance v. U.S. Federal Bureau of Investigation*, 845 F. Supp. 2d 197, 202 (D.D.C. 2012) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990)).

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Elliott v. U.S. Dep't of Agric.*, 596 F. 3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg*, 705 F.2d at 1344). It may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F. 3d 1108, 1116 (D.C. Cir. 2007) (internal citations omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance . . . ." *North v. U.S.*

*Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Agencies must show that their searches for responsive records "us[ed] methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F. 2d at 68; *see also Campbell v. Dep't of Justice*, 164 F. 3d 20, 27 (D.C. Cir. 1998).

"A search does not have to be exhaustive, and whether a search is adequate is determined by methods, not results . . . [and an] agency's failure to locate a specific responsive document will not, on its own, render an otherwise reasonable search inadequate." *Nance*, 845 F. Supp. 2d at 201 (citing *Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009)). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting *Truitt*, 897 F.2d at 542); *see also Valencia–Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (D.C. Cir. 1999).

When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Valencia-Lucena*, 180 F.3d at 326). Once the agency has provided a "reasonably detailed" affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (internal citation and quotation marks omitted). The Court finds that Defendant's submissions suffice to provide a relatively detailed account of the scope of its searches. *Davidson v. Dep't of State*, 206 F. Supp. 3d 178, 190 (D.D.C. 2016).

Defendant's affiant, Lewis Oleinick, Chief Privacy Act and FOIA Officer for DLA, manages DLA's PA and FOIA programs to include the processing of requests, responses and administrative appeals. Oleinick Decl. at 1 ¶ 1. In his Declarations, Mr. Oleinick identifies the

multiple record systems and locations used for each of the searches, why the relevant information would be in those locations and systems, personnel involved with the searches, and the scope of the searches. *See, e.g., id.* at 2–30; Oleinick Exhs. 6 (a)–(b), 11 (a)–(b), 17, 19, 22 (b), 37, 41 (a)–(b), 47 (a)–(b), 50, 56, 57 (a)–(b), 59 (b), 62; *see also* Supp. Oleinick Decl. at 2–3. The methodology of each search is also thoroughly explained. *Id.* The Declarations and supporting documentation provide the exact listing of search terms used in response to each request and each modified request. Oleinick Decl. at 5 ¶ I (e), 6 ¶ 2 (b), 7 ¶ 2 (b), 18 ¶ 3 (d), 24 ¶ 2 (b), 28 ¶ 7 (b); Oleinick Exhs. 6 (a)–(b), 11 (a)–(b), 17, 22, 37, 41 (a)-(b), 47 (a)–(b), 50, 56, 57 (a)–(b), 59 (b), 62. The submissions specifically detail the dates of these searches and results of the searches conducted on Plaintiff's behalf. Oleinick Decl. at 2–30; Oleinick Exhs. 6 (a)–(b), 11 (a)–(b), 17, 19, 22 (b), 37, 41 (a)–(b), 47 (a)–(b), 50, 56, 57 (a)–(b), 59 (b), 62; Supp. Oleinick Decl. at 2–3. In addition to being reasonably detailed, the Declarations appear to have been made in good faith. *Id.*

Plaintiff does not identify other locations that she believes Defendant should have searched or propose different search terms. Instead, she argues that the "Department of Justice and the Attorney General's Office were negligent in supervision, training and retention of AUSA Boesch." Pl.'s Opp. at 2. Plaintiff's arguments do not pertain to the issue at hand, that is, whether the agency conducted an adequate search reasonably expected to uncover responsive records, given that neither DOJ nor AUSA Boesch are alleged to have had any involvement in the search for responsive records at DLA. Having not produced any countervailing evidence, the Court finds that Defendant's searches were reasonable under existing attendant circumstances. *See White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

ii.     Adequacy of the *Vaughn* Indices

In FOIA cases, the justification for withholding information is typically contained in a declaration or affidavit, referred to as a "*Vaughn* index," as derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  No set formula exists for an adequate *Vaughn* index, because "the critical elements of the *Vaughn* index lie in its function, and not its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997).  The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption," and thus must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 n.9 (D.C. Cir. 1986).

Based on the extensive amount of records reviewed in this matter, Defendant submits *Vaughn* Indices, rather than a single index, consisting of approximately 92 pages.  *See Vaughn* Indices, Oleinick Exs. 65–70.  Additionally, Defendant has submitted a litany of exhibits as corroborating support, including, DLA "FOIA/PA Action and Information/Review Sheets," and inter-office correspondence, all of which contain, among other information: extensive request details, relevant search instructions, data on locations searched, terms used, search results, and exemptions applied.  *See id*. at 6 (a)–(b), 11 (a)–(b), 17, 19, 22 (b), 37, 41 (a)–(b), 47 (a)–(b), 50, 56, 57 (a)–(b), 59 (b), 62.  Plaintiff has also submitted the Supplemental *Vaughn* Index, which details records specifically relating to Plaintiff's former supervisor, Michael Simon. *See generally* Supp. *Vaughn* Index & attached Exs.

Collectively, the *Vaughn* Indices, including the supplemental Index, and supporting documents, adequately describe the records (or portions of records) withheld and the exemptions justifying their withholding.  They describe the nature and length of the given document, the

Exemption applied, and other information contextualizing the basis for the document's withholding. As an example, Defendant's *Vaughn* Indices list document, Bates Nos. 161–91, "Re: Concern about Ms[.] Bell in Office Space," an email dated February 27, 2013 at 6:45 p.m., between DLA's general counsel and a "J6" (supervisor). *Vaughn* Indices at 5. Defendant withheld this document pursuant to Exemption 5, stating that the email provided legal guidance regarding Plaintiff's situation at the time. It further states that, "[t]hese records contain confidential communications between an attorney and his client regarding a legal matter for which the client has sought professional advice and involved legal advice conveyed as part of a professional relationship in order to provide the agency with advice on the legal ramifications of its actions." *Id.*

The *Vaughn* Indices are also sufficiently detailed with regard to Exemption 6. For example, the documents at Bates Nos. 230–33, are described as internal records regarding "Furlough Letters for J62 Employees." *Vaughn* Indices at 7. These records, drafted on March 20, 2013, were withheld pursuant to Exemption 6 because "[t]hese records discuss furlough letters, but include discussions concerning other employees. Exemption b(6) protects information about individuals when disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. Therefore, employee names were removed." *Id.*

Defendant's Supplemental *Vaughn* Index is similarly specific. For example, it lists document, Bates Nos. 274–76, referring to an email entitled "Yolanda Bell's Eagle Timesheet for PPE January 12, 2013." Supp. *Vaughn* Index at 1. The Supplemental Index provides information that this document was withheld pursuant to Exemption (b)(5), as the email contained "dialogue, opinions, and recommendations between Bell's supervisor's [sic] in J-6. These records reflect the give-and-take of the consultative process and release of these records would injure the quality of

agency decisions by damaging open, frank discussions on matters of policy between subordinates and supervisors." *Id.*

Taken together, the two *Vaughn* Indices and supporting documents are sufficiently specific "to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union*, 802 F.2d at 527.

### iii.     Failure to Exhaust – Request Nos. 15–HFP–00011 & 15–HFP–00030

"Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA. *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [ ] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby*, 920 F.2d at 61). Similarly, a Privacy Act requester must exhaust administrative remedies before bringing suit against an agency for access to agency records pertaining to him. *See Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990).

Further, an agency may assess fees for the search for and duplication of documents requested under FOIA, and may require advance payment before processed records are released. 5 U.S.C. § 552(a)(4)(A). "Exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 66; *Trueblood v. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996).

FOIA directs agencies to waive or reduce otherwise applicable fees only "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). That fee waiver provision is focused not on the nature of the requester but on the nature of the request. *See Cause of Action v.*

*FTC*, 799 F.3d 1108, 1121 (D.C. Cir. 2015).  DOD has established similar parameters for granting a fee waiver.  *See* 32 CFR § 286.12 (I).

Plaintiff did not request a fee waiver for Request No. 15–HFP–00011.  Oleinick Decl. at 24–25 ¶ IV 2(f); Oleinick Ex. 50.  Plaintiff requested a fee waiver for Request No. 15–HFP–00030.  Oleinick Decl. at 29 ¶ 9 (c), 30 ¶ 9 (d)–(e); Oleinick Exs. 60–62.  However, Defendant determined that Plaintiff failed to meet the criteria contained within 32 CFR § 286.  Plaintiff has offered no argument as to why her request contributes to a public interest and justified waiver. See *id.*

Plaintiff did not pay the assessed fees for either Request No. 15–HFP–00011 or Request No. 15–HFP–00030, despite being allotted an adequate amount of time, and despite fair notice from the Defendant regarding potential administrative closure of the requests.  Oleinick Decl. at 24–25 ¶ IV 2(f), 30 ¶ 9 (d)–(e); Oleinick Exs. 5, 62.  Therefore, Plaintiff did not exhaust her administrative remedies with respect to Request Nos. 15–HFP–00011 and 15–HFP–00030.

iv.    FOIA Exemptions[6]

Exemption 5:

Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  It protects documents "normally privileged in the civil discovery context." *Judicial Watch*, 365 F.3d at 1113.  Thus, protected materials under Exemption 5 include materials shielded by the attorney work-product doctrine and "what is sometimes called the 'deliberative process' privilege." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*,

---

[6]  The Court need not consider the applicability of the Privacy Act's exemptions as an agency may not rely exclusively "on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individuals under the provisions of [the FOIA]." 5 U.S.C. § 552a(t)(2).  Because Defendant properly reviewed and released responsive records under FOIA, the Court will only address the justifications for withholding information under FOIA. 5 U.S.C. § 552a(b)(2); *Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C.Cir.1982).

532 U.S. 1, 8 (2001). Exemption 5 also encompasses all documents which constitute attorney-client communications. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Defendant justifies its Exemption 5 withholdings based on (1) the attorney–client privilege and attorney work-product doctrine, and (2) the deliberative process privilege. Def.'s Mem. at 24–33; Def.'s Stmt. at 9–17. The Court will first analyze Defendant's withholdings based on the attorney–client privilege and attorney work–product doctrine, and will then turn to the deliberative process withholdings. Summary judgment is warranted on issues relating to Defendant's invocation of the attorney work–product doctrine and attorney–client privilege.

The attorney work–product doctrine protects "the mental impressions, conclusions, opinions, or legal theories of an attorney," as well as "factual materials prepared in anticipation of litigation." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) (quotation marks omitted). The District of Columbia Circuit has explained that the proper test considers "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *FTC v. Boehringer Ingelheim Pharms. Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). The agency must establish that the records were created with a "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). Under this test, the agency must do the following to justify its withholding: "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Justice*,

110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016).

The District of Columbia Circuit has also held that material generated in anticipation of litigation, or "work product," may be used for ordinary business purposes without losing its protected status. *Deloitte*, 610 F.3d at 138. This aspect of the work–product doctrine allows courts to extend protection to a document that "serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation." *Id.* at 138.

This work–product protection has also been extended to ". . . documents prepared in anticipation of litigation regardless of whether the anticipated litigation ever occurs." *In re Sealed Case*, 146 F.3d at 888 (internal citation omitted). Further, "[i]f lawyers had to wait for specific claims to arise before their writings could enjoy work product protection, they would not likely risk taking notes about such matters or communicating in writing with colleagues, thus severely limiting their ability to advise clients effectively." *Id.* at 887–88. An agency may anticipate litigation, and consequently generate work product materials, before the filing of a complaint "if the prospect of litigation is identifiable," but nonetheless still a contingency, the work product privilege may apply. *United States v. Exxon*, 87 F.R.D. 624, 638–39 (D. D.C. 1980) (holding that two years did not automatically disqualify a document from protection as work–product).

"To qualify for protection from disclosure under the attorney–client privilege, a communication must satisfy each of three criteria: (1) the person to whom the communication was made is a member of the bar of a court (2) who in connection with the communication is acting as a lawyer and (3) the communication was made for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 283–84 (D.D.C. 2016) (internal citations, quotation

marks, and alterations omitted). In the context of a government agency, "the 'client' may be the agency and the attorney may be an agency lawyer." *Id.* at 284 (quoting *Tax Analysts*, 117 F.3d at 618.

Here, the Court finds that the invocation of the protections of work–product and attorney–client privilege was appropriate. Plaintiff argues that the work–product doctrine does not protect DLA's records because some of the documents were created "months before her filing of a charge of discrimination." Pl's Opp'n. at 14. The Court disagrees. The record indicates that litigation could reasonably have been anticipated, and in fact, was either imminent or ongoing relative to the dates of the withheld or redacted documents. Pursuant to the information submitted by Defendant, and information on the public record, Plaintiff filed an informal complaint to initiate an investigation process in November 2012, and Defendant was notified no later than December 2012. *See Vaughn* Indices at Bates Nos. 144, 207–8, 122, 177, 731–38; *see also Bell v. Dep't of Justice*, No. 16–02403, Plaintiff's Supplemental Opposition to Summary Judgment, [ECF No. 27], at 4 ¶ 1. On January 16, 2013, Plaintiff filed her first formal EEO complaint, No. DLAF-13-0039, against DLA for "disability discrimination, failure to accommodate, hostile work environment, and retaliation for prior EEO activities." *See Bell v. Dep't of Justice*, No. 16-02403, Plaintiff's Complaint, [ECF No. 1], at 13 ¶ 31; Defendant's Motion to Dismiss, [ECF No. 9], at 3 ¶ 1, Ex. 1.

Between late 2012 to date, Plaintiff has filed approximately nine, if not more, formal and informal EEO complaints, and two MSPB appeals. *See* Compl. at 1 ¶ 1, n.1; Def.'s Mem. at 1, n.1; Pl.'s Opp. at 3; *Vaughn* Indices at Bates Nos. 38–9, 41, 65, 132–33, 181–82, 481–82, 633–37, 706–7, 709–800, 769–68, 837–40, 1239, 1684–91, 1701, 1859–61, 2033–63, 3834–40; *see also Bell v. Dep't of Justice*, No. 16-02403, Defendant's Motion to Dismiss, [ECF No. 9], at 3–6, 10–11, Exs. 1–7, 17. Additionally, Plaintiff filed suit against Defendant in the Eastern District of

Virginia on April 29, 2014. *Bell v. Dept. of Defense*, Case No. 14-cv-470 (TSE) (IDD), [ECF No. 1]; *see also* Oleinick Decl. at 4 ¶ I (f). Plaintiff also began filing suit against Defendant in this Court in 2015 and has filed several subsequent lawsuits against Defendant to date. *See* n.1, *supra*. Additionally, it appears that Plaintiff filed a worker's compensation appeal. *See Vaughn* Indices at Bates Nos. 161–64.

From this record, it would appear that Defendant was on notice of impending litigation from as early as fall of 2012, if not earlier, as Plaintiff began requesting modifications and expressing continued concerns regarding office safety and her reasonable accommodations throughout 2011 and early 2012. *See Vaughn* Indices at Bates Nos. 87–91, 100, 457, 462, 144, 207–8, 122, 177, 563–75, 731–38, 1070, 1327, 2090–102, 2124–177, 2429; Supp. *Vaughn* Index at Bates No. 1003; *see also Bell v. Dep't of Justice*, No. 16-02403, Plaintiff's Supplemental Opposition to Summary Judgment, [ECF No. 27], at 4 ¶ 1.

Defendant's *Vaughn* Indices show that a large amout of documents ranging from between 2011 and 2012 were released in full to Plaintiff. *See, e.g., Vaughn* Indices at Bates Nos. 2–4, 28–9, 34, 42–9, 92–100, 122, 142, 174–81, 205–6, 211–22, 225, 301–79, 437–43, 455–80, 524–46, 556—62, 586–614, 628, 633–74, 723–30, 741–60, 771–85, 789–809, 1058–70, 1319–26, 1952–55, 2030–32, 2090-102, 2116–133, 2303-329, 2417–424. With few exceptions, Defendant does not appear to have invoked the work–product privilege until the end of 2012, around the time Plaintiff filed her first informal EEO complaint. *See, e.g., id*. at Bates Nos. 144, 207–8, 213–19. The majority of withholdings from 2011 through late 2012 are withheld pursuant to Exemption 6, not Exemption 5. *See, e.g., id*. at Bates Nos. 246–315, 323–50.

Defendant invokes attorney-client or work–product privilege for most of its withholdings, all of which appear to involve the general counsel or another of Defendant's attorneys. *See, e.g.,*

*id.* at Bates Nos. 9–10, 14, 16, 76–7, 87–8, 94–7, 547, 556. These documents also fall into fairly recognizable categories. The withheld documents are comprised of: draft letters and legal documents, draft responses to Plaintiff and to congressional complaints, responses to EEO inquiry and investigation, other legal memoranda, and correspondence relating thereto. *See, e.g., id.* at Bates Nos. 17–20, 98–100, 408–10, 1085–103, 1134–36, 1267–68, 1622–23, 1857–58, 2078–81.

The vast majority of the documents are emails containing advice between counsel and various DLA supervisors, and/or Human Resources. *See, e.g., id.* at Bates Nos. 3, 9–10, 14, 76–7, 87–8, 94–7, 161-64, 498–511, 523, 547, 556, 617–26, 1297, 1129–130, 1297, 2003–81. These emails between counsel and the DLA employees involve strategy regarding: Plaintiff's requests for accommodations and the potential of grant or denial, job requirements and obligations fulfilled or unfulfilled by the Plaintiff, formal and informal complaints filed by Plaintiff, EEO investigations, ongoing or potential litigation, general litigation tactics, Plaintiff's subpoenas, Plaintiff's worker's compensation appeal, Plaintiff's congressional complaints, and requests from Human Resources regarding the best course of action regarding Plaintiff's requests or complaints at the given time. *See id.*

The withheld documents thus fall squarely within the scope of both the attorney–client privilege and the attorney work-product doctrine. *See Boehringer Ingelheim Pharms. Inc.*, 778 F.3d at 149; *Nat'l Sec. Counselors*, 206 F. Supp. 3d at 283–84. In each of these withholdings, Defendant states that it withheld portions of the documents because "[t]hese records contain confidential communications between an attorney and his client regarding a legal matter for which the client has sought professional advice and involved legal advice conveyed as part of a professional relationship in order to provide the agency with advice on the legal ramifications of its actions," or language that is very similar. *See, e.g., id.* at Bates Nos. 1634; *see also* Oleinick

Decl. at 14 ¶ 2 (aa).  Despite Plaintiff's argument that these documents may have been created for a business purpose rather than a legal one, given the context in which these documents were prepared—potential or ongoing litigation with Plaintiff—the Court finds that the documents are exempt from disclosure under the attorney–client privilege and work–product doctrine.

The remainder of the documents withheld pursuant to Exemption 5 fall within the ambit of the "deliberative process privilege."  Def.'s Mot. at 17, 27, 31–3.  The deliberative process privilege covers "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150.

For the deliberative process privilege to apply, a court must first determine whether the withheld materials are both "predecisional" and "deliberative." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (internal quotation marks omitted).  Materials are "predecisional" if they are "generated before the adoption of an agency policy."  *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  Materials are "deliberative" if they reflect "the give-and-take of the consultative process," *id.* (quoting *Coastal States*, 617 F.2d at 866), "by which the decision itself is made," *Jowett, Inc. v. Dep't of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn*, 523 F.2d at 1144).

Here, Defendant invokes the deliberative process privilege with respect to ". . . drafts and deliberative email discussions that took place prior to final decisions that were made regarding Plaintiff's various requests for reasonable accommodations, drafts of affidavits and declarations submitted as part of her EEO actions, as well as discussions about how best to approach the challenges that Plaintiff presented as an employee."  Def.'s Mem. at 31¶ 2; Def.'s Stmt. at 12–13,

16.  Defendant withheld the following types of documents: certain supervisor-to-supervisor emails regarding internal and legal strategy, strategy and decision-making memoranda and correspondence regarding the handling of Plaintiff's ongoing safety complaints/administrative grievances/worker's compensation claim, draft responses/pleadings/affidavits, recommendations regarding Plaintiff's accommodation requests and potential decisions regarding such, leave request decision-making, discussions with HR regarding Plaintiff's requests and claims, drafts and strategy regarding congressional complaints, correspondence with agency counsel regarding contemplated legal decisions,  discussions regarding proposed internal DLA structure and/or restructuring, and discussions of proposed changes to employees' job roles and descriptions.  *See, e.g., Vaughn* Indices at Bates Nos. 1–2, 78–9, 207–9, 399, 406–410, 417–420, 557–559, 633–634, 1060–1061, 1317–1318, 1833–1836, 1837–1839, 1840–1842, 1846–1847, 1848, 2064–2075, 2530–2536, 3595.  Nearly all of these documents involve DLA supervisors, officers, and/or legal counsel involved in dealing with Plaintiff's numerous employment disputes, requests for accommodations, and ongoing EEO claims and litigation.  *See id.*  Again, these withholdings and redactions mostly range between late 2012 to date, a period of time during which a myriad of decisions needed to be made as to how to deal with all of these ongoing issues.  *See id.*

In opposition, Plaintiff argues that the deliberative process privilege is inapplicable because some of the withheld documents were created after a decision was made regarding her reasonable accommodation request.  Pl.'s Opp. at 12.  However, the scope of these FOIA/PA requests, and in turn, Defendant's deliberations and invocation of protections relating thereto, are far more expansive than the initial determination(s) regarding singular accommodation requests. *See, e.g., Vaughn* Indices at 1–2, 78–9, 207–9, 399, 406–10, 417–18, 419–20, 557–59, 632–34, 1060–61, 1317–18, 1833–42, 1846–48, 2064–75, 2530–36, 2595. Plaintiff's continued dialogue, requests,

claims, complaints, and litigation, all support the concept that Defendant's deliberations were myriad and continued throughout an extended period of time. *See id*; *see also* Compl. at 1 ¶ 1 n.1; Def.'s Mem. at 1 n.1; Pl.'s Opp. at 3; *Vaughn* Indices at Bates Nos. 38–9, 41, 65, 132–33, 181–82, 481–82, 706–7, 709–800, 769–68, 837–40, 1239, 1684–91, 1701, 1859–61, 2033–63, 3834–40; *see also Bell v. Dep't of Justice*, No. 16-02403, Defendant's Motion to Dismiss, [ECF No. 9], at 3–6, 10–11, Exs. 1–7, 17.

Plaintiff also argues that Defendant unfairly withheld every email or correspondence exchanged by or between her supervisors Michael Simon, Davis McLemore, and Kenneth Fielding, once she asserted her right to reasonable accommodation. Pl.'s Opp. at 11 ¶ 2. The Court does not find that Defendant withheld "every single conversation." *Id.* The Court finds, in fact, that the majority of this withheld documentation is email correspondence between Plaintiff's supervisors and counsel. *See, e.g.*, *Vaughn* Indices at Bates Nos. 72–3, 1595–1601. There are some inter-supervisor emails that are withheld, *see, e.g., id.* at Bates Nos. 557-59, 1706, 1837–42, however, Defendant did release and partially release certain correspondence from her supervisors, again leading the court to believe that Defendant carefully parsed through the documents before invoking the deliberative process exemption. *See, e.g., id.* at Bates Nos. 1, 141–43, 144–55, 159–68, 169–73, 185–88, 189–93, 194–98, 199–201. Additionally, and as discussed, Defendant provided an adequate supplemental disclosure of specific Simon-related documentation. *See* Supp. Oleinick Decl. at 4 ¶ 15; *see, e.g.,* Supp. *Vaughn* Index at Bates Nos. 1–61, 63–100, 101–200.

Furthermore, the Court is satisfied the documents were properly withheld. These documents were, by their nature, "predecisional" and prototypically "deliberative." These documents all involved drafts and/or proposed responses to various administrative, legislative, and/or or legal matters. *See, e.g., Vaughn* Indices at Bates Nos. 1–2, 78–9, 207–9, 399, 406-10,

417-18, 419–20, 557–59, 632–34, 1060–61, 1317–18, 1833–42,1846–48, 2064–75, 2530–36, 2595. The documents also contain discussions and proposals regarding internal topics and concerns regarding Plaintiff and other employees. *See id.* The same logic applies to communications pertaining to potential responses to potential or ongoing lawsuits and EEO investigations. These communications were generated at a time when Defendant was actively formulating strategy, and thus reflect "the give-and-take of the consultative process." *McKinley*, 744 F. Supp. 2d at 138.

In the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of its own employees that is an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions. *Sears, Roebuck & Co.*, 421 U.S. at 150. The privilege promotes the quality of agency decision-making by protecting decision-makers' ability to communicate freely and privately without concern that deliberations will become the subject of discovery. *Klamath*, 532 U.S. at 8–9. The Court finds that the listed documents are protected pursuant to the deliberate process privilege, and that Exemption 5 was properly invoked.

Exemption 6:

Defendant invokes Exemption 6, 5 U.S.C. § 552(b)(6), as a basis for approximately 12 of its withholdings, "to protect the reasonable expectation of privacy of its employees." Def.'s Mem. at 2 ¶ 1. It appears that the Exception 6 withholdings primarily relate to Requests Nos. 15–HFP–00001 & 00006. Def.'s Mem. at 3–4; Def.'s Stmt. at 3–5. The relevant documents were mostly produced with redactions pursuant to Exemption 6, as they include names, identifiers, and other detailed information regarding other DLA employees. *Id.* The documents specifically relate to other employees' security clearances, missing mandatory travel and timekeeping information, and

government charge card agreements.  *See, e.g., Vaughn* Indices at Bates Nos. 265–96, 323–50.

They also include performance appraisals and training requirements of other employees.  *Id.* at

Bates Nos. 246–264.  Lastly, these documents contain furlough information of other employees.

*Id.* at Bates Nos. 230–33.

Under Exemption 6, an agency may withhold "personnel and medical files and similar

files" when the disclosure of that information "would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the term "similar

files" broadly so as "to cover detailed Government records on an individual which can be identified

as applying to that individual."  *U.S. Dep't of State v. Wash. Post*, 456 U.S. 595, 602 (1982)

(internal quotation mark and citation omitted).  Not only does the exemption protect files, "but

also bits of personal information, such as names and addresses, the release of which would 'create

a palpable threat to privacy.' "  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir.

2015) (alterations and internal quotation marks) (quoting *Judicial Watch*, 449 F.3d at 152).  "The

information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold

for determining whether information applies to a particular individual is minimal." *Milton v. U.S.

Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d

1002, 1006 (D.C. Cir. 1990)).  The names and information withheld here meets the given standard.

Once the agency meets this threshold determination, a court must next ask whether

disclosure would compromise a "substantial" privacy interest, because FOIA requires the release

of information "if no significant privacy interest is implicated." *Multi Ag Media LLC v. Dep't of

Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (brackets and internal quotation marks omitted)

(quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). The

individuals implicated here indeed have a substantial privacy interest in not only their names and

contact information, but in their personal and confidential employment information. *See Davidson*, 206 F. Supp.3d at 200 (citing *Prison Legal News*, 787 F.3d at 1147); *see also Multi Ag Media LLC*, 515 F.3d at 1229; *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013).

Because such a substantial privacy interest exists here, a court next tests whether release of such information would be a "clearly unwarranted invasion of personal privacy," *Wash. Post v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation marks omitted) (quoting 5 U.S.C. § 552(b)(6)), by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (brackets and internal quotation marks omitted) (quoting *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose . . . ." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Here, knowledge of employees' names, employment performance history and evaluations, security clearances, requirement compliance history, time periods of furlough, etc., would reveal little or nothing more about the Defendant's conduct. Plaintiff has generally argued that there is a public interest in releasing these documents, because of the need to know if defendant ". . . is operating above board in regard to it employees and a good steward of sometimes billions of taxpayer dollars, in how taxpayers dollars are spent, to detect fraud and abuse in their programs, and in how it treats its employees." Pl.'s Opp. at 21 ¶ 2. Essentially, Plaintiff is alleging that

Defendant has engaged in widespread discriminatory misconduct. *Id.* But other than, apparently, seeking these documents as discovery to support her own claims, Plaintiff fails to indicate how these particular documents she seeks are tied to the exceedingly broad public interest upon which she relies.

A plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see Blackwell v. FBI*, 646 F. 3d 37, 41 (D.C. Cir. 2011). Such a showing requires "more than a bare suspicion" of official misconduct: "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id.* at 174–75. On this point, Plaintiff fails.

Plaintiff's generalized allegations of widespread misconduct do not rise above mere speculation and therefore do not advance her asserted public interest. Absent a legitimate public interest, the private interest in avoiding injury and embarrassment that can result from the unnecessary disclosure of such information is of much greater concern. *See Wash. Post*, 456 U.S. at 599.

As her other general argument challenging the agency's assertion of Exemption 6, Plaintiff points to the content of Request Nos. 15–HFP–00001 and 00006. Pl.'s Opp. at 18. Plaintiff is again aggrieved that the agency asserted Exemption 6 to prevent her from obtaining records with information on the "disability status, race, age, sex, and EEO activity" of other DLA employees. *Id.* Although Defendant provided a spreadsheet with some releasable information in this regard,

it did not provide the full underlying records to avoid an unwarranted invasion of these third-party employees' personal privacy. *See* Oleinick Decl., 15–16 ¶ (ff). The Court agrees with Defendant that this type of disclosure would constitute a clearly unwarranted invasion of personal privacy, outweighing the vague and overly broad public interest in disclosure that Plaintiff has asserted. *See Horner*, 879 F.2d at 874.

All information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. *Wash. Post. Co.* at 456 U.S. at 602. "[A]n employee has at least a minimal privacy interest in his or her employment history and job performance evaluations . . . [and] [t]hat privacy interest arises in part from the presumed embarrassment or stigma wrought by negative disclosures." *People for Ethical Treatment of Animals v. USDA*, 2007 U.S. Dist. Lexis 41825, 2007 WL 1720136, at *4 (D.D.C. 2007). Federal civilian employees also have a protectible privacy interest in purely personal details that do not shed light on agency functions. *See Kidd v. DOJ*, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005). Courts generally recognize the sensitivity of information contained in personnel-related files and have accorded protection to the personal details of a federal employee's service. *See, e.g., McLeod v. U.S. Coast Guard*, 1997 WL 150096 at *1 (D.C. Cir. 1997).

The Court finds that the employees' interest in keeping the witheld information private outweighs Plaintiff's asserted public interest in disclosure, and the Court will grant the Defendant's Motion for Summary Judgment on the Exemption 6 withholdings that it asserted in its *Vaughn* indices, declarations, and supporting documentation. *Davidson*, 206 F. Supp. 3d at 200.

v.      In Camera Review

Plaintiff seeks in camera review of withheld documents relating to her supervisors, Simon, McLemore, Fielding and Coleman, the spreadsheet with requested "demographic information"

relating to her supervisors and/or other employees, and [sic] " . . . letters to Mr. James M. Coyne and Ms. Stacey Salo, dated January 13, 2015, appealing agency FOIA/PA determinations dated December 1, 2014, December 30, 2014 and December 31, 2014; letter to Ms. Kathy Dixon dated, March 10, 2015, "Freedom of Information Act/Privacy Act Request 5 , (demographic information including race, sex, age, and disability status, and EEO activity - with names redacted)."  Pl.'s Opp. at 11 ¶ 4, 13 ¶ 3, 16–17, 21–22.  Plaintiff's basis for in camera review is solely derived from her objections to the exemptions set forth by Defendant.  *See id.*  Plaintiff also generally alleges that Defendant engaged in intentional and/or negligent misconduct during the search process.  *See* Pl.'s Opp. at 2, 21; Compl. at 16.

This Circuit has set out criteria for determining the need for in camera review in FOIA/PA cases.  *See Allen v. CIA*, 636 F. 2d 1287, 1293 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology of Washington D.C. v. Smith*, 721 F. 2d 828, 831–32 (D.C. Cir. 1983).  These factors do not limit the broad discretion of a court to decide whether to conduct in camera review, but merely constitute a list of considerations.  *Id.* at 1297.  These factors include (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) possible bad faith on the part of the agency, (4) whether the agency proposes in camera review, (5) disputes concerning the content of the document, and (6) the strong public interest in disclosure.  *Id.* at 1297–99. Considering these factors, given the reasonably detailed nature of Defendant's Declarations, the absence of any evidence of bad faith by Defendants, and the lack of justification provided by Plaintiff supporting such a time-consuming review, the request for in camera review shall be denied.  *See id.*

## V. PLAINTIFF'S ADDITIONAL REQUESTS FOR RELIEF

i.     Motion to Amend

Plaintiff has requested leave to amend her Complaint, and in doing so, has attached her proposed amended complaint. *See generally* Mot. to Amend.; *see also* ECF 30–1. Plaintiff seeks to amend her complaint to incorporate a ninth request, specifically, Request No. DLA HQ–2018–002519. Mot. to Amend. at 1–2; Pl.'s MTA Ex. 1; Plaintiff's Reply to Defendant's Opp. to MTA ("Pl.'s Reply to MTA Opp.") at 2–3.

Pursuant to Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). District courts, however, have discretion to deny leave to amend a complaint for reasons such as "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice on the opposing party, or futility of amendment." *See Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

This case has now been pending for nearly two and a half years. It has reached its dispositive conclusion. The Court has granted several prior requests for extensions on behalf of Plaintiff, protracting the outcome of this case. Granting Plaintiff's Motion to Amend would unnecessarily delay proceedings in this action. A delay of several years between the filing of the initial action and the request to amend is generally undue and suggests prejudice to a defendant. *Atchinson*, 73 F.3d at 427 (holding that a delay of two years from filing of action is undue); *Brown v. FBI*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (holding that a delay of two years is undue).

Allowing amendment would be prejudicial if a defendant ". . . would be required to engage in significant new preparation . . . " or it would create ". . . added expense and the burden of a more

complicated and lengthy trial." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (internal quotation marks and citation omitted). The Court finds that Plaintiff's proposed amendment would significantly delay the resolution of this matter by necessitating a renewed round of briefing by all parties. This Court has acknowledged that the "considerable time and effort briefing summary judgment on the issues presented in a FOIA case weighs against granting leave to amend after that briefing has begun." *James Madison Proj. v. Dep't of Justice*, 208 F. Supp. 3d 265, 280 (D.D.C. 2016); *see also Sai v. Transp. Sec. Admin.*, 155 F. Supp. 3d 1, 7–8 (D.D.C. 2016) (denying leave to file a supplemental pleading adding new FOIA requests because the addition "would merely result in undue delay in the disposition of this case and would not enhance judicial efficiency"); *Brown*, 744 F. Supp. 2d at 123.

The Court also notes that, with respect to the futility of an amendment, a district court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing *Foman*, 371 U.S. at 182). Before a requester can bring a FOIA or Privacy Act suit in District Court, a requestor must first exhaust all available administrative remedies. *See Oglesby*, 920 F.2d at 61; *Haase,* 893 F.2d at 373. In order to bring a new FOIA/PA claim, Plaintiff must demonstrate that she complied with the agency's filing procedures and the agency's internal appeals process. *See Hidalgo*, 344 F.3d at 1259. Defendant indicates that Plaintiff has failed to exhaust her administrative remedies with respect to Request No. DLA HQ–2018–002519, and Plaintiff offers no evidence to the contrary. Def.'s Opp. to MTA at 3–4. Therefore, amendment at this juncture would be futile, given that Plaintiff has not established exhaustion of administrative remedies. *See In re Int'l Union, United Mine Workers of Amer.*, 231 F. 3d 51, 54 (D.C. Cir. 2000). For all of these stated reasons, Plaintiff's Motion to Amend the Complaint is denied.

ii.      Plaintiff's "*Ex Parte*" Letter

On June 4, 2018, Plaintiff filed an "*Ex Parte*" Letter requesting certain accommodations. *See generally*, Ex. P. Let.  Plaintiff appeared to serve the other side with this letter, however, because she lists Defendant on a certificate of service.  *Id.* at 2.  In the letter, Plaintiff discusses the hardships of filing multiple cases in this court.  *Id.* at 1 ¶ 1.  Plaintiff asks that the court allow her to ". . . take a moment to lay [] out [her] actions side by side to see where they may cross or overlap."  *Id.*

To the extent that Plaintiff required time to compare her matters filed before this Court, she has now had ample time to do so.  Plaintiff's "*ex parte*" request was filed in early June, and this opinion is now being rendered in September.  Therefore, Plaintiff has had meaningful opportunity to assess her matters and any applicability one may have to one another.  *Id.* at 1 ¶ 1.  Plaintiff has not filed any motion for consolidation to date nor has she described how additional time is necessary to advance the claims raised in this action.  The record abundantly reflects that this Court has been exceedingly generous when Plaintiff has previously requested additional time.  Therefore, Plaintiff's "*Ex Parte*" Letter, and the relief requested therein, will be denied as unnecessary and unjustified.

## VI.  CONCLUSION

For all of the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment.  Plaintiff's Motion to Amend is denied.  Plaintiff's request for relief in her "*Ex Parte*" Letter is denied.   An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date:   September 27, 2018